UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────

TIFFANY ROZLER, o/b/o A.E.R.S.,

                    Plaintiff,

                                          **DECISION and ORDER**
        -vs-                              **No. 1:12-CV-1000(MAT)**

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

─────────────────────────────────────────

## I.   Introduction

     Represented by counsel, Tiffany Rozler ("Plaintiff") has
brought this action on behalf of her infant son ("AERS") pursuant
to Title XVI of the Social Security Act ("the Act"), seeking review
of the final decision of the Commissioner of Social Security ("the
Commissioner") denying AERS's application for Supplemental Security
Income ("SSI"). This Court has jurisdiction over the matter
pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.  Procedural History

     Plaintiff submitted an application for SSI on behalf of AERS
on September 16, 2008. T.64, 124-27.[1] After it was denied on
November 5, 2008, T.64-68, Plaintiff requested a hearing before an
administrative law judge. Plaintiff and AERS appeared with their
non-attorney representative before William E. Straub ("the ALJ") on

─────────────────

[1]
     Citations to "T." refer to pages in the certified copy of the
administrative transcript, filed by the Commissioner in connection with her
Answer to the Complaint.

November 16, 2010. T.31-63. After considering AERS's claim de novo, the ALJ issued an unfavorable decision on December 6, 2010. T.11-26. Plaintiff requested review of the hearing decision by the Appeals Council, which was denied June 22, 2012. T.6-9. On February 27, 2013, the Appeals Council extended the time within which Plaintiff could file a civil action to October 19, 2012. This action followed.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

### III. Summary of the Administrative Transcript

#### A.    Pre-Application Date Academic and Medical Records

AERS underwent a psychological evaluation by Amanda R. DeSio, B.A. and Lisa D. Dekeon, Ph.D. on November 29, 2006, at his home. He was approximately two years-old at the time and had been referred due to concerns regarding frequent temper tantrums, difficulty following directions, easy frustration, and high activity level. He had received special education services through Early Intervention ("EI") since the summer of 2006.

The evaluators found that AERS was easily engaged in formal testing, but required frequent redirection in order to stay on task and complete the evaluation. The test results were likely an underestimate of his of cognitive abilities due to his difficulty in attending to tasks appropriately.          Results of the

-2-

social/emotional development testing were considered accurate. Due to inattention and frustration, AERS could not complete the Stanford-Binet Intelligence Scales, Fifth Education. He quickly became uninterested, requiring frequent prompting to respond to each item. Abbreviated Battery IQ was 94 (the average range) and at the 35 percentile. The evaluator noted that the Abbreviated Battery results should be interpreted with caution. Pre-academic skills were inconsistent and negatively affected by his inattentive behaviors. AERS's speech was sometimes difficult to understand, especially when he spoke loudly and rapidly. In social/emotional development, AERS appeared to have difficulty waiting his turn or waiting for the evaluator to prepare materials between tasks. His mother expressed concern about his behavior and described him as a very unpredictable child who had frequent temper tantrums and was easily frustrated. The evaluators observed that AERS rarely persisted in an activity he found challenging. He played in an aggressive manner, frequently banging and throwing toys. On testing using the Child Behavior Checklist, there were severe difficulties (two standard deviations above the mean) in Attention Problems, Aggressive Behavior, Externalizing Problems, and Total Problems. T.165.  The evaluators recommended that AERS be considered for services provided by the Committee on Preschool Special Education due to his delays in social and emotional development.

The educational evaluation conducted in conjunction with the psychological evaluation revealed that AERS's poor attending skills and self-directed behaviors were negatively affecting his pre-academic skill development. During the evaluation he was self-directed and impulsive. He had a hard time "catching on" to what was expected of him and often responded before listening to directions. He was unwilling to change the way he was doing something when provided with a suggestion to do it differently. When he could not complete a task successfully, he would often yell, shut down, or throw what he was working on. Taking information provided by his mother into account, AERS was given credit for academic skills through the 30-month level, which was below-age expectations. Results of the evaluation indicated statistically significant scores in the areas of attention problems and aggressive behavior. There were borderline clinical scores in the emotionally reactive, withdrawn and sleep problems domains. His mother described AERS's behavior as unpredictable, explosive, and difficult to manage; it was difficult to take him places, and even within the home he required frequent redirection and very close supervision. According to his mother, he had not shown improvement in behavior or social skill development through the five months of EI that he had received. Rather, he continued to have difficulty attending to tasks, handling frustration and playing appropriately. The evaluators felt that AERS would benefit from enrollment in a

-4-

small, highly structured classroom setting with firm limits and clear consequences for negative behavior. Therefore, special education services were indicated.

An Occupational Therapy Evaluation administered on December 13, 2006, revealed that AERS's fine motor skills were in the second percentile. He showed definite difficulty regulating and controlling his physical activity and had a very limited ability to self-regulate. Due to his high activity level, AERS had difficulty with fine motor tasks even during the moments he did attempt them (e.g., his hands would shake noticeably). He could not engage in "graded" levels of activity, which would allow a "winding down" period and the emergence of fine and visual motor skills. Thus, his high and impulsive, activity level was retarding the development of fine and visual motor skills. He was not imitating age-appropriate activities, was unable to regulate his activity level, and was unsuccessful transitioning to a sedentary task. As a result, direct occupational therapy ("OT") services were recommended.

Pursuant to his Preschool Individualized Education Plan ("IEP") for January 14, 2008, through December 18, 2008, AERS was placed in a small, special education class for an extended school year and received OT twice per week. Socially, AERS was highly active and impulsive and displayed a very short attention span. His teacher reported minimal interaction with his peers; he had difficulty playing alongside them and sharing. Often, AERS refused

to participate in group activities, and his behavior was noncompliant and unpredictable. Tantrums occurred at least several times per day. When he had a tantrum, he would cry, throw objects and furniture, kick and punch the wall, bang his head on the wall, make comments about hating school, threaten to hurt himself. The evaluators observed that AERS needed to develop age-appropriate emotional regulation skills.

In the area of physical development, AERS continued to exhibit significant sensory processing delays. He was in constant motion and could not maintain prone position for more than 30 seconds without readjusting. He required a structured environment and a great deal of behavior management, such as reinforcement and frequent prompts and redirection to complete tasks.

### B. Post-Application Date Academic and Medical Records

AERS was admitted to Child and Adolescent Treatment Services ("CATS") on September 10, 2008. Intake notes with a psychiatrist (whose name is illegible) show complaints by Plaintiff concerning AERS's aggression and "out of control behavior". Plaintiff stated that AERS "had been kicked out of Head Start". He was impulsive, irritable, hyperactive, and had sleep disturbance. Diagnoses were Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD").

In a Childhood Disability Evaluation form dated November 5, 2008, nonexamining state agency physician J. Meyer, M.D. opined

that AERS had "marked" limitations in the domain of attending and completing tasks and "no limitation" in the other domains, including acquiring and using information and interacting and relating with others. T.240-41. Dr. Meyer concluded that AERS's combination of impairments, while severe, did not meet or medically equal any listed impairment.

On November 5, 2008, an IEP Annual Review indicated that AERS's cognitive skills appeared age appropriate. T.259. He was socializing with peers, but needed adult verbal prompts to share, take turns, and not be bossy. Per his mother, AERS did not sleep several nights per week. When his mother brought him to school (as opposed to his taking the bus), AERS was observed to be crying, screaming for his mother and throwing a tantrum. T.259. If he presented with a task that he perceived to be difficult, he would become frustrated. However, with positive encouragement he would complete the task. Many times with age appropriate self help skills AERS would refuse to do it. AERS benefitted from a structured environment with a daily routine and needed a lot of positive feed back and encouragement to try activities he perceived as challenging. T.259-60, 275. He frequently tried to challenge adult authority, but with positive verbal prompts, he would change his demeanor. AERS was placed in special education classes five days per week. OT services were discontinued after evaluation on November 13, 2008. T.264-66.

AERS's preschool IEP for the period from January 5, 2009, through June 25, 2009, indicated that he was placed in a 12:1+1 classroom. It was noted that, as far as social development, AERS needed to attempt perceived challenges without becoming frustrated and giving up, and to share and not be bossy with his peers. T.274.

On November 19, 2009, Kelly Jaszka, MS, CAS opined AERS would not qualify for special education services, based solely on her classroom observation of him. T.284-85.

In a treatment summary dated October 22, 2010, Emilie Tothero, LCSW-R indicated that AERS had been referred for counseling by his kindergarten teacher Mrs. Brockman, because he was very distracted in class, lacked appropriate social skills and was urinating in his pants in class. T.319. His mother reported he was angry and aggressive at home. AERS attended outpatient counseling with his mother at CATS, and he also attended individual, family and social skills group sessions in school from September 24, 2009 to April 19, 2010. LCSW-R Tothero stated that as treatment progressed, AERS learned to control his impulses better, and learned to interact more positively with peers in group therapy. His attention span and impulse control improved with the medication Strattera (for ADHD), which was prescribed in February 2010.

On October 13, 2010, AERS's first grade teacher, Erin Bryce ("Ms. Bryce"), completed a "Teacher Questionnaire". T.322-29. Also in the record are Ms. Bryce's weekly planner which contains her

notes documenting AERS's behavior and performance in her first
grade classroom from September 8, 2010, to November 15, 2010.
T.332-42. In the domain of Acquiring and Using Information,
Ms. Bryce indicated that AERS has a "very serious problem" with
reading and comprehending written material, expressing ideas in
written form, and applying problem-solving skills in the classroom;
a "serious problem" providing organized oral explanations; and an
"obvious problem" comprehending math problems, understanding and
participating in class discussion, and learning new material. In
the domain of Attending and Completing Tasks, Ms. Bryce indicated
that AERS has a "very serious problem" focusing long enough to
finish a task, refocusing when necessary, sustaining attention,
changing from one activity to another without being disruptive,
completing assignments, completing work accurately, working without
distracting himself or others, and working at a reasonable
pace/finishing on time; and an  "obvious problem" paying attention
when spoken to directly, carrying out single-step instructions,
carrying out multi-step instructions, waiting to take turns, and
organization. In the domain of Interacting and Relating With
Others, Ms. Bryce observed a "very serious problem" with AERS's
ability to play cooperatively with other children and make and keep
friends (for instance, he repeatedly tried to get other students in
trouble and on at least one occasion, kicked a friend); and a
"serious problem" with his ability to seek attention appropriately,

follow rules, respect/obey adults in authority; and an "obvious" problem with his ability to relate experiences and tell stories, use language appropriate to the situation and listener, introduce and maintain relevant and appropriate topics of conversation, and take turns in conversation. Ms. Bryce noted that AERS "needs close proximity to the lead teacher/adult @ all times" and "needs frequent adult supports and reminder5s through the school day." T.325. In the domain of "Moving About and Manipulating Objects", Ms. Bryce noted a "serious problem" demonstrating strength, coordination and dexterity inasmuch as he has poor handwriting. In the domain of Caring for Himself or Others, AERS had a "very serious problem" being patient when necessary and a "serious problem" handling frustration appropriately, identifying and appropriately asserting emotional needs, responding appropriately to changes in his mood, and using appropriate coping skills; and an "obvious problem" knowing when to ask for help.

## IV.  Applicable Law

### A.  Standard of Review

A determination by the Commissioner that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." or when decision is based upon legal error. <u>See</u> 42 U.S.C. § 405(g); <u>see also</u> <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted). "Where the Commissioner's decision rests on adequate findings supported by

evidence having rational probative force," a reviewing court may not substitute its judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). However, this deferential standard is not applied to the Commissioner's application of the law. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

**B.    Legal Standard for Disability Claims of Children**

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Pursuant to this statutory dictate, the Social Security Administration ("the SSA") has promulgated, by regulation, a three-step sequential analysis to determine whether a child is eligible for SSI benefits on the basis of a disability. Encarnacion ex rel. George v. Astrue,

586 F.3d 72, 75 (2d Cir. 2009) (citing 20 C.F.R. § 416.924 <u>et seq.</u>).

First, the ALJ determines whether the child is engaged in "substantial gainful activity." 20 C.F.R. § § 416.924(a), (b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," in that it causes "more than minimal functional limitations." <u>Id.</u>, § 416.924©. If a severe impairment is present, the ALJ must then consider whether the impairment "meets, medically equals," or "functionally equals" a presumptively disabling condition listed in the regulatory "Listing of Impairments." <u>Id.</u>, § 416.924(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.

"For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" <u>Encarnacion</u>, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). A child's limitations are evaluated in the context of the following six domains of functioning:

    (1) acquiring and using information;
    (2) attending and completing tasks;
    (3) interacting and relating with others;
    (4) moving about and manipulating objects;
    (5) caring for oneself; and
    (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

## V.    The ALJ's Decision

At the time of the ALJ's decision on December 6, 2010, AERS was six years and eleven months-old, and was in first grade. The ALJ found, at step one of the evaluation, that AERS had not engaged in substantial gainful activity since the application date. At step two, the ALJ found that AERS has the following severe impairments: ADHD and ODD.

At step three, the ALJ determined that AERS does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ specifically considered Listing 112.11 (Attention Deficit Hyperactivity) and found that while AERS does have "some" limitations in the areas of acquiring and using information and attending and completing tasks, they are "less than marked" limitations. The ALJ accordingly entered a finding of "not disabled". The ALJ also declined Plaintiff's request to receive testimony from a medical consultant at a supplemental hearing regarding to whether AERS "medically equals" a listed impairment.

## VI.   Discussion

In her motion for judgment on the pleadings, Plaintiff asserts two arguments: (1) the ALJ erred when he determined that AERS does not have an impairment or combination of impairments that functionally equals a listed impairment; and (2) the ALJ failed to

make a credibility finding regarding Plaintiff's testimony and statements concerning AERS's limitations.

### A.   Functional Equivalency to Listing 112.11

To meet the impairment set forth in Listing 112.11 (Attention Deficit Hyperactivity), the record must contain the following: (1) medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity (2) resulting in a marked impairment in at least two of the following areas: (a) age-appropriate cognitive/communicative function; (b) age-appropriate social functioning; (c) age-appropriate personal functioning; and (d) maintaining concentration, persistence and pace. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11. A "marked" impairment for purposes of meeting a Listing "means more than moderate but less than extreme" degree of limitation. "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." Id., § 112.00(c).

Plaintiff argues that the ALJ erred in weighing the opinions of state agency review physician Dr. Meyer and AERS's first grade teacher, Ms. Bryce. Plaintiff asserts that if the ALJ had properly weighed these opinions, he would have concluded that AERS has

"marked" limitations in three domains, namely, (1) attending and completing tasks, (2) interacting and relating with others, and (3) caring for himself.

## 1. Attending and Completing Tasks

The domain of attending and completing tasks principally entails an assessment of the degree to which a child can "focus and maintain . . . attention, and . . . begin, carry through, and finish . . . activities." 20 C.F.R. § 416.926a(h). Some limitations the Commissioner may consider in connection with this domain include (a) being easily startled, distracted, or overreactive to sounds, sights, movements, or touch; (b) being slow to focus on, or failing to complete activities of interest; © repeatedly becoming sidetracked from activities or frequently interrupting others; (d) becoming easily frustrated and giving up on tasks, including ones the child is capable of completing; and (e) requiring extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(3).

Plaintiff argues that because Dr. Meyer's opinion is the only physician's opinion in the record concerning the severity of AERS's deficits in the six domains of functioning, it should have been afforded more than "some weight". Of particular relevance, physician Dr. Meyer found "marked" limitations in the domain of attending and completing tasks. The ALJ gave "some weight" to this opinion "[1] based on [Dr. Meyer's] review of the evidence and

[2] extensive programmatic experience." The first part of the ALJ's rationale is so vague as to be essentially meaningless. The second part of the ALJ's rationale conflicts with his assignment of only "some weight" to Dr. Meyer. That is to say, if the ALJ relied on Dr. Meyer's "extensive programmatic experience", then one would expect the ALJ to credit his or her opinion as to AERS's "marked limitation" in the area of attending and completing tasks.

Because the Court cannot discern the rationale for the ALJ's assignment of weight to Dr. Meyer's opinion, remand is necessary. See, e.g., Berry v. Schweiker, 675 F.2d 464, 468-69 (2d Cir. 1982) (stating remand "further findings or a clearer explanation" would be appropriate where the court is "unable to fathom the ALJ's rationale in relation to evidence in the record," "especially where credibility determinations and inference drawing is required").

## 2.   Interacting and Relating With Others

The domain of interacting and relating with others considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(I). "Interacting means initiating and responding to exchanges with other people, for practical or social purposes[;] [r]elating to other people means forming intimate relationships with family members and with friends who are [the child's] age, and

sustaining them over time[;] [and] [i]nteracting and relating require [the child] to respond appropriately to a variety of emotional and behavioral cues." 20 C.F.R. § 416.926a(i)(1)(i)-(iii).

The ALJ determined that AERS has "less than marked" limitations in interacting and relating with others. The ALJ considered AERS's ODD diagnosis and Plaintiff's testimony that her son is "oppositional, particularly with her, and can be bossy with his peers". The ALJ discounted AERS's oppositional tendency based on his testimony that while he gets into trouble at school for excessive talking, he has never been sent to the principal's office. In addition, the ALJ found that AERS's educational records indicated "no evidence of significant interpersonal conflict."

Plaintiff argues that the ALJ overlooked evidence that AERS lacked appropriate social skills, was urinating on himself in class, was being bossy, was not sharing, and, according to his mother, was angry and aggressive at home. Plaintiff's Memorandum of Law ("Pl's Mem.") at 17-20 (citing T.319; other citations to record omitted). Plaintiff urges that the ALJ should have relied on Ms. Bryce's Teacher Questionnaire, completed on October 13, 2010.[2] In the domain of interacting and relating with others, Ms. Bryce found that AERS had a "very serious problem" playing cooperatively

---

[2]

In addition, Ms. Bryce submitted her daily observations regarding AERS from September 8, 2010 to November 15, 2010.

with other children and making and keeping friends; a "serious problem seeking" attention appropriately, respecting adults in authority, and following rules; an "obvious problem" relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, and taking turns in a conversation; and a "slight problem" expressing anger appropriately, asking permission appropriately, interpreting meaning of facial expression and body language, and using adequate vocabulary and grammar to express thoughts/ideas in everyday conversation. T.325.

Under the regulations, educational personnel, such as Ms. Bryce, are considered "other sources." SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (citing 20 C.F.R. § 416.913(d)). Opinions offered by teachers "should be evaluated by using the [20 C.F.R. § 416.927] factors," although "[n]ot every factor . . . will apply in every case." Id.

The ALJ did not give "any great weight" to Ms. Bryce's report because it was based on only one month of observing AERS and, according to the ALJ, "so divergent from other reports" in the record. The ALJ noted that LCSW-R Tothero indicated on October 22, 2010, that as AERS's outpatient counseling treatment progressed, "[e]nuresis stopped, [he] learned to control his impulses better, and learned to interact more positively with peers in group."

T.319.   The Court notes that LCSW-R Tothero's report was a discharge summary relative to AERS's treatment at CATS, which ended on April 19, 2010. T.319. Thus, the fact that LCSW-R Tothero's letter was dated October 22, 2010, does not mean that it was based on observations that actually occurred in September or October 2010, as was the case with Ms. Bryce's report, which was completed contemporaneously with her observations of AERS in her first grade classroom. In other words, it is unclear if LCSW-R Tothero's letter and Ms. Bryce's report are actually inconsistent with each other. Remand is necessary to obtain clarification as to the period of time reflected by LCSW-R Tothero's letter, and whether LCSW-R Tothero had interactions with AERS during the period of time covered by Ms. Bryce's report. See, e.g., Berry, 675 F.2d at 468-69 (stating remand "further findings or a clearer explanation" would be appropriate where the court is "unable to fathom the ALJ's rationale in relation to evidence in the record," "especially where credibility determinations and inference drawing is required").

### 3.   Caring for Self

The caring for self domain evaluates "how well [the child] maintain[s] a healthy emotional and physical state, including how well [he or she] get[s his or her] physical and emotional wants and needs met in appropriate ways; . . . cope[s] with stress and changes in [the] environment; and whether [her or she can] take care of [his or her] own health, possessions, and living area."

20 C.F.R. § 416.926a(k). In the domain of caring for self, the ALJ found that AERS was able to feed, bathe and dress himself with age-appropriate assistance, although [Plaintiff] claims that he does not do so." The ALJ acknowledged that there was "some" evidence of problems with enuresis, but stated that those problems had resolved. Accordingly, the ALJ found that AERS has "no limitations" in the area of self-care.

Plaintiff asserts that the ALJ's conclusion was not supported by substantial evidence because it failed to consider contrary evidence in the record, including the report of AERS's first grade teacher, Ms. Bryce. The report that Ms. Bryce completed included, in the domain of caring for self, skills in addition to the basic hygiene and personal care skills that the ALJ addressed in his decision. According to Ms. Bryce, AERS had a "very serious problem" being patient when necessary; a "serious problem" handling frustration appropriately, appropriately asserting emotional needs, and calming himself; and an "obvious problem" knowing when to ask for help and a very serious problem being patient when necessary. T.327. The Teacher Questionnaire that Ms. Bryce completed was a form promulgated by the SSA. Based on the areas about which the SSA solicits input from teachers, it is apparent that self-care activities besides basic hygiene are important to assessing functioning in this domain. The ALJ, however, did not take any apparent account of the evidence concerning AERS's limitations with

regard, <u>inter alia</u>, to expressing his thoughts and feelings in an appropriate way, handling frustration, and being patient when necessary, all of which are important parts of the functioning expected with respect to the domain of caring for oneself. <u>See</u> <u>Juckett ex rel. K.J. v. Astrue</u>, No. 09-CV-708(FJS/VEB), 2011 WL 4056053, *14 (N.D.N.Y. June 29, 2011) (finding error where ALJ did not consider evidence concerning claimant's limitations with regard to expressing her thoughts and feelings in an appropriate way, "an important part of the functioning expected with respect to th[e] domain" of caring for oneself and others) (citing 20 C.F.R. § 416.926a(k).

Accordingly, the Court finds that the ALJ's conclusion that Plaintiff has "no limitation" with regard to caring for herself is not supported by substantial evidence and was not based on the application of the appropriate legal standards.

**B.  Credibility Finding**

Plaintiff contends that the ALJ disregarded his obligation to make a specific credibility finding regarding her testimony and statements concerning AERS's limitations.

Although the ALJ is free to accept or reject testimony of a claimant's parent, <u>Williams on behalf of Williams v. Bowen</u>, 859 F.2d 255, 260 (2d Cir. 1988), a finding that a witness is not credible must be set forth with sufficient specificity to permit intelligible review of the record. <u>Id.</u> (citing <u>Carroll v. Secretary</u>

of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). SSR 96-7p requires ALJs to articulate the reasons behind credibility evaluations:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996). "If the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent[,]" F.S. v. Astrue, No. 1:10-CV-444 MAD), 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing Jefferson v. Barnhart, 64 F. App'x 136, 140 (10th Cir. 2003)), and "make specific findings concerning the credibility of the parent's testimony. . . ." Id. (citing Jefferson, 64 F. App'x at 140 (citation omitted)).

Here, the ALJ did not make a specific credibility finding as to Plaintiff's testimony concerning her son's limitations. Instead, in the portion of the decision regarding the domain of attending and completing tasks, the ALJ summarily stated that "[w]hile the evidence is consistent with some difficulties [in this domain], the

evidence does not support the level of limitation alleged by the *claimant*." T.18 (emphasis supplied). This was insufficient. See SSR 96-7p, 1996 WL 374186, at *4; <u>Jefferson</u>, 64 F. App'x at 140 (holding that ALJ's finding that claimant's mother's testimony was "credible only to the extent that [it was] supported by evidence of record" is "standard boilerplate language" and an insufficient explanation of credibility) (citation omitted). It is well settled that credibility determinations are to be made by the ALJ in the first instance, and post-hoc rationalizations offered by the Commissioner are not permissible. <u>E.g.</u>, <u>LoRusso v. Astrue</u>, No. 08-CV-3467(RJD), 2010 WL 1292300, at *5 (E.D.N.Y. Mar. 31, 2010) (citing, <u>inter alia</u>, <u>Snell v. Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999)). The Court thus is left without a basis to determine whether the appropriate legal standards were applied; nor can it evaluate whether the ALJ considered the entire evidentiary record in arriving at his conclusion. <u>Bennett v. Astrue</u>, No. 07-CV-0780 (NAM), 2010 WL 3909530, at *10 (N.D.N.Y. Sept. 30, 2010) (citing <u>Harrison v. Secretary of Health and Human Servs.</u>, 901 F. Supp. 749, 757 (S.D.N.Y. 1995)). Accordingly, remand is required "for a determination of [P]laintiff's credibility which must contain specific findings based upon substantial evidence in a manner that enables effective review." <u>Id.</u>

**VII. Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is requested to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      December 23, 2014
            Rochester, New York